IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE EVERCARE COMPANY, | ) | CASE NO. 1:08 MC 42 |
| | ) | |
| Plaintiff, Counterclaim-Defendant, | ) | JUDGE BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| 3M COMPANY, | ) | **ORDER** |
| | ) | |
| Defendant, Counterclaim-Plaintiff. | ) | |
| | ) | |

On May 23, 2008, Defendant 3M Company ("3M") filed a *Motion to Compel Compliance with Subpoena* pursuant to Fed. R. Civ. P. 37 and 45 and Local Rule 37.1, seeking non-party Chemsultants International, Inc.'s ("Chemsultants") compliance with 3M's subpoena, which was issued out of this Court, and calls for the production of documents and a deposition. (Doc. 1.) On June 6, 2008, Plaintiff The Evercare Company ("Evercare") filed an *Opposition to Defendant 3M Company's Motion to Compel Compliance with Subpoena*, in which it argues that the documents and deposition testimony sought by 3M are protected from discovery by the attorney work product doctrine. (Doc. 5.) On June 10, 2008, Chemsultants filed an *Opposition to Defendant 3M Company's Motion to Compel Compliance with Subpoena*, in which it requests that the Court resolve the issue and order Chemsultants either to not produce the documents because they are protected by the attorney work product doctrine or to produce the documents pursuant to the subpoena. (Doc. 10.) On June 20, 2008, 3M filed a *Reply Memorandum in Support of Motion to Compel Compliance with Subpoena*. (Doc. 11.) On June 30, 2008, Judge Boyko referred the above-

captioned case to the Magistrate Judge, pursuant to Fed. R. Civ. P. 72a and Local Rule 72.3a, for a ruling on 3M's *Motion to Compel Compliance with Subpoena*. (Doc. 12.).

For the following reasons, the Magistrate Judge GRANTS Defendant's *Motion to Compel Compliance with Subpoena*.

## I. FACTS

Evercare and 3M are engaged in a false advertising dispute pending in the Northern District of Georgia. (Doc. 1, at 6; Doc. 5, at 4.) 3M has challenged, as false advertising under the Langham Act, statements allegedly made by Evercare that its lint rollers are "50% Stickier!" and "37% Sticker!" than 3M's competing rollers. (*Id.*) Evercare and 3M are competitors in the lint roller business. (*Id.*) On March 22, 2007, 3M sent a letter to Evercare complaining about Evercare's advertising claims. (*Id.*) According to Evercare, shortly thereafter it retained Paul, Weis, Rifkind, Wharton & Garrison LLP ("Paul, Weis") to represent its interests in its dispute with 3M. (Doc. 5, at 4.) On August 15, 2007, 3M filed a challenge before the National Advertising Division of the Council of Better Business Bureaus ("NAD"). (Doc. 1, at 6.) Evercare thereafter filed a declaratory judgment action against 3M in the Northern District of Georgia. (*Id.* at 6-7.)

Third party Chemsultants is an Ohio company that has provided adhesive product testing services to Evercare in the past. (Doc. 1, at 7-8; Doc. 5, at 4.) It is undisputed that Chemsultants conducted adhesive product testing for Evercare in 2001. (*Id.*) Evercare alleges that this testing demonstrated that Evercare's lint roller products were at least 37 percent stickier than 3M's products, leading Evercare to make this claim on some of its products. (Doc. 5, at 4.) In April 2007, shortly after being retained by Evercare, Paul, Weiss hired Chemsultants as a technical consultant to assist in defending against 3M's allegations of false advertising. (*Id.*) Over time, a series of

correspondence transpired between Paul, Weis and Chemsultants. (*Id.*) In May 2007, Chemsultants ran a comparative test using Evercare's and 3M's lint rollers. (*Id.*) Evercare has produced the result of this May 2007 Chemsultants' test to 3M in a report titled "Project 07-236 Final Report." (Doc. 1, Defendant's Evidentiary Appendix Exhibit 3, May 18, 2007 Project 07-236 Final Report: Tack of Lint Roller Products; Doc. 5, at 5.)

On March 24, 2008, 3M served a subpoena on Chemsultants seeking the production of documents and a deposition of Chemsultants related to Chemsultants' lint roller testing. (Doc. 1, Defendant's Exhibit (DX) A.) The return date for Chemsultants' production of documents pursuant to the subpoena was April 8, 2008. (*Id.*) Chemsultants did not serve written objections before the time specified for compliance or within 14 days after the subpoena was served pursuant to Rule 45. And, neither Evercare nor Chemsultants has filed a motion to quash the subpoena.

On April 7, 2008 Evercare served 3M with "Evercare's Objections to 3M's Subpoena to Chemsultants International, Inc." and asserted work product protection and attorney-client privilege. (Doc. 1, DX B.) Evercare also objected to the dates demanded by 3M for Chemsultants' deposition. (*Id.*) On April 9, 2008, Chemsultants informed 3M that it was sending documents to 3M pursuant to the subpoena. (Doc. 1, DX C.) Chemsultants further informed 3M that it did not produce all of the documents at the request of Paul, Weis due to concerns over work product. (*Id.*) On April 23, 2008, 3M sent letters to Paul, Weis and Chemsultants concerning Chemsultants' withholding of some of the requested documents. (Doc. 1, DX D.) In its letter to Paul, Weis, 3M asserted that the basis was unclear for Evercare's objections to Chemsultants' production of certain documents pursuant to the attorney-client privilege or work product doctrine. (*Id.*) 3M also asserted that Evercare's objections did not appear to be a valid basis to instruct Chemsultants not to comply with

the subpoena. (*Id.*)  3M requested that Evercare provide the basis for each document withheld from production in response to the subpoena, no later than April 25, 2008. (*Id.*)  In its letter to Chemsultants, 3M advised it that absent an order quashing the subpoena, it was Chemsultants' obligation to fully comply with the subpoena without limitation, and requested that Chemsultants provide all responsive documents yet to be produced by April 28, 2008. (Doc. 1, DX E.)  The parties thereafter met and conferred via telephone conference regarding the Chemsultants documents. (Doc. 1, DX F, G, H, I, J.)

On May 2, 2008, Evercare produced a work product log listing the documents withheld as work product by Chemsultants. (Doc. 1, DX K.)  Thereafter, 3M filed its *Motion to Compel*, claiming that the descriptions provided in the log for the documents withheld are insufficient and fail to discharge Evercare's burden of establishing the applicability of the attorney work product doctrine. (Doc. 1., at 6.)

## II.  LAW AND ANALYSIS

### A.  3M's Subpoena and Evercare's Objections

The subpoena to Chemsultants sought production of documents related to Chemsultants' lint roller testing, including but not limited to, all documents relating to any testing of 3M's and/or Evercare's lint roller products; all documents sufficient to describe the testing methods and procedures used in any testing of 3M's and/or Evercare's lint roller products; all documents relating to any communications and correspondence between Chemsultants and Evercare; and any communications or correspondence between Chemsultants and any third party regarding testing of 3M's and/or Evercare's lint roller products. (Doc. 1, DX B.)  The subpoena also commanded Chemsultants to appear for a deposition on April 22, 2008. (*Id.*)

Evercare objected to 3M's subpoena and instructed Chemsultants to withhold 23 documents, claiming protection under the attorney work product doctrine. (Doc. 1, at 5; Doc. 5, at 2.) Evercare asserts that the documents were created by or for Paul, Weiss for the purposes of this litigation. (Doc. 5, at 3.) With respect to the deposition, Evercare asserts that because Chemsultants is a non-testifying expert hired by Evercare, under Fed. R. Civ. P. 26(b)(4)(B), 3M would ordinarily be prohibited from discovering "facts and opinions" through deposition or by interrogatory. (Doc. 5, at 5.) However, because Chemsultants is also a fact witness with knowledge of specific testing done on behalf of Evercare over time, Evercare does not object to 3M's proposed deposition of Chemsultants, assuming that the scope of the deposition will not stray into the subject matter of Chemsultants' consulting. (*Id.*)

### B. Applicability of Waiver to Objections to the Rule 45 Subpoena

3M first contends that Chemsultants has waived the right to object to the Rule 45 subpoena by failing to serve objections before the return date or to file a motion to quash. (Doc. 1, at 11.) 3M asserts that Evercare does not have standing to object to Chemsultants' disclosure of documents pursuant to the subpoena. (*Id.*) Relying on *McCoy v. Southwest Airlines Co., Inc.*, 211 F.R.D. 381, 384-85 (C.D. Cal. 2002), 3M further asserts that the objections Evercare served to 3M are insufficient to suspend Chemsultants' obligation to comply with the subpoena. (*Id.*) Evercare responds that because it, and not Chemsultants, is the party whose privileged information is being sought by 3M's subpoena, Evercare was entitled to object to the subpoena. (Doc. 5, at 12.)

In *McCoy*, the court stated that only the non-party served with the subpoena can prevent disclosure by objection. 211 F.R.D. at 384. The party to whom the subpoenaed records pertain cannot simply object, but rather, must file a motion for a protective order or a motion to quash. *Id.*

(quoting Schwarzer, Tashima & Wagstaffe, California Practice Guide: Federal Civil Procedure Before Trial, P11:422 (2002 rev.)). Accordingly, the *McCoy* court found that generally, the non-party's failure to timely make objections to a Rule 45 subpoena required the court to find that any objection has been waived. *Id.* (citing *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998); *Creative Gifts, Inc. v. UFO*, 183 F.R.D. 568, 570 (D. N.M. 1998); Schwarzer, Tashima & Wagstaffe, California Practice Guide: Federal Civil Procedure Before Trial, P11:424 (2002 rev.)). However, relying on *American Electric Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999), the court noted that the failure to timely object to a Rule 45 subpoena will not bar consideration of objections in unusual circumstances and for good cause. *McCoy*, 211 F.R.D. at 385. Unusual circumstances have been found to exist where: "(1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoenaed witness is a non-party acting in good faith; and (3) counsel for the witness and counsel for the subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged the legal basis for the subpoena." *Id.* (quoting *American Electric*, 191 F.RD. at 136-37. In *Anwalt Energy Holdings*, the Southern District of Ohio court reaffirmed the legal principles articulated in *American Electric* that absent unusual circumstances and for good cause, the failure to serve written objections to a subpoena within the time specified by Rule 45 constitutes a waiver of the objections. *Anwalt Energy Holdings, Inc. v. Falor Cos.*, No. 2:06-cv-955, 2008 U.S. Dist. LEXIS 43783 (S.D. Ohio 2008) (citing *American Electric*, 191 F.RD. at 136, *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996); *Angell v. Shawmut Bank Connecticut Nat'l Assoc.*, 153 F.R.D. 585, 590 (M.D.N.C. 1994)).

3M would have this Court rely on *McCoy* and hold that Chemsultants' failure to serve timely objections to the subpoena constitutes a waiver of such objections. However, 3M has not presented, nor has this Court been able to identify, any comparable case law from the Northern District of Ohio or the Sixth Circuit. Even applying the principles set forth in *McCoy* and *American Electric*, it appears that a finding of waiver would not be appropriate under the circumstances of this case. The record demonstrates that Chemsultants is a non-party that has made a good-faith attempt to comply with the subpoena. Evercare served 3M with objections to the subpoena on April 7, 2008, which was before the return date of the subpoena. (Doc. 1, DX B.) Evercare claimed attorney work product immunity in its objections. (*Id.*) On April 9, 2008, Chemsultants notified 3M that it was sending its production of documents, but that it did not produce a few of the documents at the request of Paul, Weiss "due to concerns over work product." (Doc. 1, DX C.) Thus, 3M was made aware of Evercare's attorney work product concerns prior to the return date of the subpoena. Chemsultants cited these concerns when it notified 3M that it was withholding production of some of the requested documents. In its *Opposition to Defendant 3M Company's Motion to Compel Compliance with Subpoena*, Chemsultants asserted that it is merely a witness and not an interested party in the pending litigation. (Doc. 10.) Chemsultants explained that it did not produce certain requested documents because Evercare's counsel advised Chemsultants that those document were subject to attorney work product protection, and thus it did not feel that it could produce those documents. (*Id.*) Chemsultants further explained that it does not desire to impede either party in the litigation and respectfully requests that the Court resolve the issue. (*Id.*)

Because 3M was made aware of attorney work product concerns over the requested documents prior to the return date of the subpoena and because it appears that non-party

Chemsultants has acted in good faith, the Court concludes that Chemsultants' failure to serve timely objections to the subpoena or file a motion to quash does not constitute a waiver of the attorney work product immunity under the circumstances of this case. A reading of the remainder of this Order will illustrate that the outcome with respect to 3M's motion is the same as it would have been even if the Court had found such a waiver.

### B. Applicability of Work Product Immunity

Plaintiff next claims that Evercare has failed to establish that the Chemsultants documents are protected by the attorney work product doctrine. (Doc. 1, at 15.) Plaintiff asserts that the cursory descriptions provided in Evercare's privilege log are insufficient to enable it to assess Evercare's claim of work product immunity. (*Id.* at 16.) The Court agrees with 3M that Evercare's privilege log is inadequate in that it does not comply with the Federal Rules of Civil Procedure.

Rule 26 sets forth the standard for work product protection. The Rule provides that a party ordinarily "may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative," including the other party's attorney or consultant. Fed. R. Civ. P. 26(b)(3)(A). With respect to an expert hired only for trial preparation, the Rule provides that:

> Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial.

Fed. R. Civ. P. 26(b)(4)(B). When an entity withholds subpoenaed information under a claim that it is subject to work product protection, the entity must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible

-8-

>things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

Fed. R. Civ. P. 45(d)(2)(A)(i)-(ii). The objecting entity retains the burden to show that the material was "prepared in anticipation of litigation or for trial." *Toledo Edison Co. & Cleveland Electric Illuminating Co. v. G A Technologies, Inc.*, 847 F.2d 335, 339 (6th Cir. 1988). If the objecting entity does not meet this burden, "the court's inquiry ends and the documents must be produced." *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 473 (6th Cir. 2006). The Sixth Circuit has stated that an entity may satisfy its burden of showing that materials were prepared in anticipation of litigation "in any of the traditional ways in which proof is produced in pretrial proceedings such as affidavits made on personal knowledge, depositions, or answers to interrogatories," and that the showing "can be opposed or controverted in the same manner." *United States v. Roxworthy*, 457 F.3d 590, 597 (6th Cir. 2006) (quoting *Toledo Edison*, 847 F.2d at 339). Application of work product immunity will be rejected where the "only basis" for the claim consists of conclusory statements. *Roxworthy*, 457 F.3d at 597 (citing *Guardsmark, Inc. v. Blue Cross & Blue Shield*, 206 F.R.D. 202, 210 (W.D. Tenn. 2002); *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 475 (S.D.N.Y. 1993); *Senate of P.R. ex rel. Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 586 (D.C. Cir. 1987)). See also *Golden Trade, S.r.L. v. Lee Apparel Co.*, No. 90 Civ. 6291-2, 92 Civ. 1667, 1992 U.S. Dist. LEXIS 17739 (S.D.N.Y. Nov. 20, 1992) (" The focus is on the specific descriptive portion of the log, and not on the conclusory invocations of the privilege or work-product rule, since the burden of the party withholding documents cannot be "discharged by mere conclusory or ipse dixit assertions.") (quoting *von Bulow v. von Bulow*, 811 F.2d 136, 146 (2d Cir. 1987), *cert. denied*, 481 U.S. 1015 (1987); *In re Bonanno*, 344 F.2d 830, 833 (2d Cir. 1965)).

In the present case, Chemsultants responded to the subpoena by sending some responsive documents to 3M and notifying 3M that it was withholding some documents at the request of Paul, Weiss, "due to concerns over work product." (Doc. 1, DX C.)  On May 2, 2008, Evercare produced a work product log listing the documents withheld by Chemsultants. (Doc. 1, DX K.)  With respect to each document withheld, the log generally provides the date, author, addressee and carbon copy addressee, document type, privilege asserted, and a description of the subject matter of the documents withheld. (*Id.*)  These descriptions are brief and generally consist of recitations of the work product rules.  For example, the bases for many of the documents withheld are as follows:

> "Document prepared in anticipation of litigation re: consulting products"
>
> "Communication prepared in anticipation of litigation and reflecting mental impressions, conclusions, opinions, or legal theories of counsel re: scope of consulting arrangement and adhesives consulting"
>
> "Communication prepared in anticipation of litigation and reflecting mental impressions, conclusions, opinions, or legal theories of counsel re: adhesives consulting"
>
> "Communication prepared in anticipation of litigation and reflecting mental impressions, conclusions, opinions, or legal theories of counsel re: scope of consulting arrangement and adhesives consulting"

(*Id.*)  Such conclusory invocations of the work product doctrine are insufficient to show that the material was "prepared in anticipation of litigation or for trial."  These cursory statements are the only basis provided by Evercare with respect to its work product immunity claim. Because of the vagaries of the relationship between Chemsultants and Evercare, as will be more fully considered herein, the Court is unwilling to conclude that Evercare meets its obligation by merely pointing out that the documents withheld were created after April, 2007. (Doc. 5, at 8.)  Accordingly, the Court finds that Evercare's privilege log is insufficient to enable 3M to evaluate the applicability of the

-10-

work product doctrine. Even if the Court were to assume that Evercare has established work product protection with respect to the withheld documents, once the relationship between Evercare and Chemsultants is taken into account, it is nevertheless clear that these documents must be produced.

### C. Effect of the Relationship Between Evercare and Chemsultants

3M asserts that it is not clear whether Evercare is relying on Chemsultants as an expert witness or a fact witness, but regardless, Evercare cannot selectively produce the documents that it will rely on to support its advertising claims without waiving work product protections as to the underlying and related documents. (Doc. 1, at 12.) 3M claims that because certain documents relating to Chemsultants and Chemsultants' product testing were produced during discovery in this case, protection for the remaining documents and communications must be waived. (*Id.* at 12-13.) The Court finds that these arguments have merit.

### 1. Chemsultants as a Testifying Expert

Evercare claims that it hired Chemsultants as a non-testifying technical consultant to assist in defending against 3M's allegations of false advertising. (Doc. 5, at 4.) However, Evercare also has asserted that it has expressly reserved its right to rely on the May 2007 report it produced to 3M. (Doc. 5, at 9; Doc. 1, DX L.) Evercare has not made it clear whether it intends to employ Chemsultants as a testifying expert if Evercare chooses to exercise "its right to rely" on the May 2007 report.

It is clear that Rule 26 requires parties to identify any witnesses that may be used at trial and to exchange expert reports for all testifying experts. *See* Fed. R. Civ. P. 26(a)(2)(A) ("[A] party shall disclose to other parties the identify of any witness it may use at trial to present evidence. . . . This disclosure must be accompanied by a written report--prepared and signed by the witness--if the

witness is one retained or especially employed to provide expert testimony."). Among other requirements, the expert report must set forth a complete statement of the expert's opinions and "the data or other information considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). The Sixth Circuit has thus held that Rule 26 creates a bright-line rule requiring disclosure of *all* information, including attorney opinion work product, provided to testifying experts. *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 716-17 (6th Cir. 2006). *See also In re: Commercial Money Ctr., Inc. Equipment Lease Litigation*, 248 F.R.D. 532 (N.D. Ohio 2008) (noting that the purpose of the disclosure requirement is to enable the opposing party to challenge the expert's opinions at trial). An expert is deemed to have considered anything received, reviewed, read, or authored by the expert, before or in connection with forming his opinion, if the subject matter relates to the facts or opinions expressed by the expert. *Euclid Chem. Co. v. Vector Corrosion Technologies*, No. 1:05 cv 80, 2007 U.S. Dist. LEXIS 38720, at *13 (N.D. Ohio 2007). All ambiguities must be resolved in favor of disclosure. *Id*.

If Evercare chooses to employ Chemsultants as a testifying expert, then all documents considered by Chemsultants during the entire time period that Chemsultants has served as a consultant in anticipation of litigation must be produced. *See id*; *Western Resources, Inc. v. Union Pacific R.R. Co.*, No. 00-2043-CM, 2002 U.S. Dist. LEXIS 93643 (D. Kan. 2002). Absent a stipulation or order from the Court, these disclosures must be made at least 90 days before the trial date, or, "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B), within 30 days after the other party's disclosure." Fed. R. Civ. P. 26(a)(2)(C).

**2. Chemsultants as a Non-Testifying Expert Consultant and/or Fact Witness**

Evercare claims that it hired Chemsultants as a non-testifying technical consultant to assist Evercare in defending 3M's false advertising claims. (Doc. 5, at 4.)  However, Evercare acknowledges that Chemsultants is also a testifying fact witness because Chemsultants has knowledge of specific testing done on behalf of Evercare over time, including Chemsultants' 2001 lint roller product testing. (*Id.* at 8.)  3M claims that Evercare's communications with Chemsultants, a non-party fact witness, waives its ability to claim work product immunity as to those communications. (Doc. 1, at 13.)  3M explains that Evercare could have no reasonable expectation of confidentiality as to its communications with Chemsultants, knowing that Chemsultants' testimony would be used by one or more of the parties at trial. (Doc. 1, at 8.)  3M relies on the cases *Ricoh Co. v. Aeroflex Inc.* and *Behnia v. Shapiro* to support its arguments. (*Id.* at 13.)

Citing *Ricoh* and *Behnia*, 3M asserts that dissemination of documents to a third party fact witness waives any potential work product potential. (Doc. 1, at 13.)  In *Ricoh*, the court held that work product immunity was waived with respect to specific emails that were disseminated to a third party. 219 F.R.D. 66, 70 (S.D.N.Y 2003).  In *Behnia*, the court held that disclosure of a memorandum to a third party who was "simply a fact witness" with no obligation to maintain confidentiality waived work product protection with respect to the memorandum that was disclosed. 176 F.R.D. 277, 279-80 (N.D. Ill. 1997).  Evercare asserts that because waiver was only found for the specific emails (*Ricoh*) and memorandum (*Behnia*) that were disseminated, these cases do not support the proposition, seemingly advocated by 3M, that disclosure of certain materials waives work product protection with respect to other documents. (Doc. 5, at 9.)  Citing *United States v. Skeddle*, 989 F. Supp. 917, 921 (N.D. Ohio 1997), Evercare also asserts that this Court has

-13-

commented on the apparent disagreement among courts as to whether subject matter waiver should ever apply with respect to the work product doctrine. (Doc. 5, at 9.) Evercare is correct in that *Ricoh* and *Behnia* only found waiver of work product protection with respect to the specific materials that were disclosed to a third party. However, Evercare is misguided in its assertion that 3M seeks a waiver of all work product documents due to Evercare's disclosure. An examination of subject matter waiver is irrelevant here, as all of the documents and communications at issue in this case were in fact disseminated between Evercare and third party Chemsultants.

The distinguishing feature between this case and the *Ricoh* and *Behnia* cases is that in those cases, the protected materials were disclosed to individuals who were solely third party fact witnesses, while in the present case, Chemsultants is not only a third party fact witness, but also purportedly Evercare's technical litigation consultant. It is undisputed that Chemsultants conducted adhesive product testing for Evercare in 2001. (Doc. 5, at 4.) Evercare alleges that this testing demonstrated that its lint roller products were at least 37 percent stickier than 3M's products, leading Evercare to make this claim on some of its products. (*Id.*) It should have been clear to Evercare, prior to its decision to hire Chemsultants as a consultant, that Chemsultants would likely be a fact witness in this case. Thus, the choice to employ Chemsultants as a non-testifying trial consultant, if indeed that was Evercare's intent, is highly suspect.

Ordinarily, documents and materials prepared in anticipation of litigation by a party or that party's consultant are protected under the work product doctrine. Fed. R. Civ. P. 26(b)(3)(A). Thus, if Evercare is permitted to cast Chemsultants as a non-testifying trial consultant, then generally all matters generated as a function of that relationship would be precluded from discovery under the Rules. Yet, Evercare has provided 3M with Chemsultants' report of the results of its May 2007

comparative lint roller testing. (Doc. 5, at 5.) Evercare's claim that all of the materials arising out of its trial consulting arrangement with Chemsultants are protected by the work product doctrine is dubious, considering that Evercare has also expressly "reserved the right" to rely on the May 2007 report to support its claims. Evercare defends its action with a quote about the attorney-client privilege, "litigants cannot hide behind the privilege if they are relying upon privileged communications to make their case. The attorney-client privilege cannot at once be used as a shield and a sword. But, while the sword stays sheathed, the privilege stands." *In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005) (internal citation and quotation omitted). Ironically, Evercare seeks to achieve exactly that which this quotation explains is prohibited. Evercare has consciously produced a *privileged* document, the May 2007 report, which it "reserves the right" to rely upon *as a sword* at trial, while asserting work product immunity *as a shield* to prevent disclosure that would enable 3M to test or challenge the report's veracity. If Evercare decides to introduce the report at trial, Chemsultants would then become a "testifying expert" who had escaped exposure to the normal Rules governing such witnesses, including the requirement that all of the data and information considered by such witnesses be disclosed prior to trial. *See* Fed. R. Civ. P. 26(a)(2)(B). The only way to vindicate the intent of the Rules is to treat the May 2007 report as though it will be relied upon, and consequently, treat Chemsultants as a "testifying expert." Accordingly, the Court finds that Chemsultants' May 2007 report should be treated as an "expert report" subject to the disclosures mandated by the Rules, thus trumping any claims of privilege. In the alternative, Evercare's dissemination of otherwise privileged information to Chemsultants and subsequent selective disclosure to 3M, under the circumstances of this case, waives any entitlement to resist the motion by claiming work product privilege.

The Court notes that Evercare has created the situation in which it now finds itself. Evercare knew that Chemsultants was a fact witness in this case and could have gone to an independent consulting expert if it legitimately wanted assistance in preparing its case. Thus, this situation was foreseeable and Evercare could have, but failed to take steps to avoid it. Whatever hardship results from the instant circumstance is more fairly born by Evercare, who created it, than by 3M.

Chemsultants, therefore, is hereby ordered to provide 3M with all responsive documents to the subpoena that have not been produced due to assertions of work product immunity. Pursuant to 3M's March 21, 2008 *Requests for Production*, referenced in the subpoena, disclosure is required for all documents related to Chemsultants' lint roller testing and communications with Evercare, including but not limited to, all documents relating to any testing of 3M's and/or Evercare's lint roller products; all documents sufficient to describe the testing methods and procedures used in any testing of 3M's and/or Evercare's lint roller products; all documents relating to any communications and correspondence between Chemsultants and Evercare; and any communications or correspondence between Chemsultants and any third party regarding testing of 3M's and/or Evercare's lint roller products. Chemsultants is also ordered to make itself available for deposition upon oral examination for the deposition topics listed in 3M's *Notice of 30(b)(6) Deposition*.

### 3. Substantial Need

Even if the relationship between Chemsultants and Evercare would be subject to work product protection for other reasons, because Evercare is attempting to reserve the right to use the May 2007 report, 3M has made a sufficient showing of necessity. Rule 26 provides that otherwise discoverable documents and other tangible things protected by the work product doctrine may be discovered if the party requesting the materials demonstrates that it has "substantial need for the

materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).  3M asserts that it has a substantial need for the subpoenaed documents so that it can assess the factual substantiation upon which Evercare relies in support of its advertising claims. (Doc. 1, at 17.)  3M asserts that Evercare's defense to the underlying false advertising claims is, in part, to point to Chemsultants' reports, including the 2007 report prepared at the direction of Evercare's counsel and produced by Evercare in discovery. (Doc. 11, at 12.)  Without the subpoenaed documents, 3M argues, it cannot evaluate the relationship between Chemsultants and Evercare, or test whether Chemsultants' tests were truly independent and free from influence. (*Id.*)  3M asserts that there is no other source for this information other than the documents that were withheld. (*Id.*)

Evercare contends that 3M has failed to show how Evercare's counsel could influence the results of a scientifically valid test performed by a reputable industrial testing facility. (Doc. 5, at 11.)  In response, 3M points out a number of ways in which the withheld documents could be probative as to whether such influence was present, including that counsel (1) instructed Chemsultants to run a particular test in a particular way; (2) instructed Chemsultants not to run other tests, or guided them away from those other tests; (3) caused Chemsultants to run tests they thought would turn out better; (4) told Chemsultants the result they wanted ahead of time; or (5) cherry-picked from multiple Chemsultants reports, only producing the most favorable one. (Doc. 11, at 12.)  In addition, 3M points out that the financial relationship between Evercare and Chemsultants, as well as any pressure placed on Chemsultants or criticisms or admissions by Chemsultants as to the tests or products at issue could be probative. (*Id.*)  The only means for 3M to evaluate the relationship between Evercare and Chemsultants and the veracity of Chemsultants' May 2007 report,

which Evercare voluntarily disclosed and seeks to reserve the right to use to support its advertising claims, is through disclosure of the subpoenaed documents.  Accordingly, the Court finds that 3M has made a sufficient showing of necessity under Rule 26 to require disclosure of these documents.  Pursuant to Rule 26, if a court orders disclosure of materials protected by work product immunity upon a showing of necessity, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(A)(ii)  and (B).  However, this requirement is inapplicable in the present case because, absent any finding of necessity, the Court has already determined for the reasons stated above that Chemsultants must produce all withheld responsive documents.  Thus, the "mental impressions, conclusions, opinions, or legal theories" of Evercare's counsel and Chemsultants are not protected from the disclosure.

### III. CONCLUSION

For the foregoing reasons, Defendant 3M Company's *Motion to Compel Compliance with Subpoena* is GRANTED.  Chemsultants International, Inc. is hereby ordered to provide 3M with all responsive documents to the subpoena that have not been produced due to assertions of work product immunity.  Pursuant to 3M's March 21, 2008 *Requests for Production*, referenced in the subpoena, disclosure is required for all documents related to Chemsultants' lint roller testing and communications with Evercare, including but not limited to, all documents relating to any testing of 3M's and/or Evercare's lint roller products; all documents sufficient to describe the testing methods and procedures used in any testing of 3M's and/or Evercare's lint roller products; all documents relating to any communications and correspondence between Chemsultants and Evercare; and any communications or correspondence between Chemsultants and any third party regarding

testing of 3M's and/or Evercare's lint roller products.  Chemsultants must provide the above documents and information to Plaintiff on or before July 15, 2008.  Chemsultants is also ordered to make itself available by July 22, 2008 for deposition upon oral examination for the deposition topics listed in 3M's *Notice of 30(b)(6) Deposition*.

    IT IS SO ORDERED.

                                            s/ Kenneth S. McHargh
                                            Kenneth S. McHargh
                                            United States Magistrate Judge

Date: July 10, 2008